## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**KELLIE MARTIN**                                                                    **PLAINTIFF**

**v.**                                        **Case No. 4:22-cv-00809 KGB**

**ARKANSAS DEPARTMENT OF HEALTH**                                    **DEFENDANT**

## <u>ORDER</u>

Before the Court are defendant Arkansas Department of Health's ("ADH") motion to dismiss and ADH's motion to stay discovery and deadlines in the Initial Scheduling Order (Dkt. Nos. 3; 6). Plaintiff Kellie Martin responded in opposition to both motions (Dkt. Nos. 8; 9). For the following reasons, the Court grants, in part, and denies, in part, ADH's motion to dismiss (Dkt. No. 3). On its own motion pursuant to Federal Rule of Civil Procedure 12(e), the Court directs Ms. Martin to file a more definite statement by filing an amended complaint, should she choose to do so, within 21 days from the entry of this Order. For good cause shown, the Court grants ADH's motion to stay this Court's Initial Scheduling Order and discovery (Dkt. No. 6).

### I.    Ms. Martin's Complaint

Unless otherwise noted, the Court draws the following facts from Ms. Martin's well-pleaded complaint (Dkt. No. 1). *Farm Credit Servs. of Am., FLCA v. Haun*, 734 F.3d 800 (8th Cir. 2013).

Ms. Martin brings this lawsuit against ADH alleging violations of Titles I and V of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12111–12117, 12203, and of the Arkansas Civil Rights Act ("ACRA"), Ark. Code Ann. § 16-123-101, *et seq.* As relief, Ms. Martin seeks declaratory judgment, injunctive relief, compensatory damages, and costs, including a reasonable attorney's fee, as a result of her constructive termination (Dkt. No. 1, ¶¶ 1–2). Ms.

Martin maintains that this Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. § 1331 because this suit raises federal questions under the ADA (*Id.*, ¶ 3).  Ms. Martin claims this Court has supplemental jurisdiction over her ACRA claims because those claims form part of the same case or controversy and arise out of the same common nucleus of operative facts as the alleged ADA claims (*Id.*, ¶¶ 4–5).

At all times relevant, Ms. Martin was employed by ADH as a Health Services Specialist II in the Jefferson County Health Unit (*Id.,* ¶¶ 7, 15).  ADH is a state agency organized and existing under the laws of the State of Arkansas (*Id.*, ¶ 10). During her ADH employment, Ms. Martin maintains that she was entitled to the protections and benefits provided under the ADA and ACRA (*Id.*, ¶ 9).  ADH is an employer within the meanings set forth in the ADA and ACRA (*Id.*, ¶ 8). ADH was Ms. Martin's employer as defined by the ADA and ACRA and subject to the anti-discrimination provisions of the ADA and ACRA (*Id.*, ¶¶ 12, 13).

Ms. Martin has been diagnosed with a disability (epilepsy) that substantially limits her major life activities (*Id.*, ¶ 17).  Her disability can be triggered by sights, sounds, and smells (*Id.*, ¶ 18).  Ms. Martin was able to perform her job duties with a reasonable accommodation and requested such an accommodation from ADH (*Id.*, ¶ 17).  However, Ms. Martin alleges that, during her employment, her disability worsened due to conditions experienced in her workplace, such as her coworkers talking loudly and eating strong-smelling foods (*Id.,* ¶ 18).

Ms. Martin requested an ADA accommodation from ADH to make her workplace readily accessible and usable (*Id.*, ¶ 19).  Her supervisor conducted a meeting with all units asking them to be aware of sounds and smells and how they impacted other employees (*Id.*, ¶ 20).  After making this accommodation request referencing the ADA, Ms. Martin's working conditions worsened. (*Id.*, ¶ 21).

Ms. Martin's coworkers made comments about how "crazy" it was to have a meeting over sounds and smells (*Id.*, ¶ 23).  Ms. Martin's supervisors became condescending and hostile toward her, including the district manager screaming at Ms. Martin and accosting her in the office (*Id.*, ¶ 24).  Ms. Martin's district manager made statements implying that Ms. Martin was exaggerating the impact of her disability, malingering, or using her disability as an excuse, including telling Ms. Martin, "you said your disability was controlled," "you use this disability thing a lot," and "you say you're sick[,] but you just use that as an excuse to get off." (*Id.*, ¶ 25).

The Court understands Ms. Martin to allege that, just one day after Ms. Martin reported what she characterizes as her district manager's retaliatory actions to the district manager's superior, Ms. Martin was placed on administrative leave (*Id.*, ¶ 26).  Ms. Martin claims that being placed on administrative leave constituted an adverse employment action (*Id.*).  Ms. Martin also alleges that she received a poor performance rating, which would impact her ability to advance and to receive pay increases in the future, though she does not specify when this occurred (*Id.*, ¶ 27).  Ms. Martin claims that ADH's ongoing discriminatory and retaliatory actions caused her health conditions to worsen (*Id.*, ¶ 28).  Ms. Martin maintains that she had to seek emergency medical treatment multiple times due to the stress and anxiety of the situation (*Id.*, ¶ 29).  According to Ms. Martin, ADH made Ms. Martin's working conditions so intolerable that ADH constructively terminated Ms. Martin's employment on June 17, 2022 (*Id.*, ¶ 30).

Ms. Martin contends that ADH's failure of accommodation and constructive termination on the basis of her disability harmed her (*Id.*, ¶ 32).  Ms. Martin alleges that ADH constructively terminated her employment as a direct result of discrimination on the basis of her disability status and the retaliatory actions she experienced after she made accommodation requests (*Id.*, ¶ 33).

Further, the Court understands Ms. Martin's complaint to state that other ADH employees, with equal or less tenure, had qualifying medical conditions which required accommodations or time off as a result of their disabilities and medical treatment (*Id.*, ¶ 31). Ms. Martin claims that these other ADH employees were not subject to the harassment she experienced (*Id.*).

Ms. Martin claims that these actions show that ADH intentionally discriminated against her based on her "sensory, mental, or physical disability" in violation of the ACRA. Ark. Code Ann. § 16-123-107 (*Id.*, ¶ 36). Ms. Martin cites *Clegg v. Ark. Department of Corrections*, 496 F.3d 922, 926 (8th Cir. 2007), for the proposition that claims brought under the ACRA are governed by the same standards as Title VII claims of the Civil Rights Act. 42 U.S.C. §§ 2000e–2000e17 (*Id.*, ¶ 37).

Ms. Martin filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Titles I and V of the ADA by ADH (*Id.*, ¶ 41). Ms. Martin received a Notice of Rights Letter from the EEOC (*Id.*, ¶ 42). Ms. Martin claims that all conditions precedent were satisfied prior to the filing of her lawsuit (*Id.*). She alleges causes of action for violations of the ADA anti-discrimination and anti-retaliation provisions (*Id.*, ¶¶ 40-56) and the ACRA anti-discrimination provision (*Id.*, ¶¶ 34-39).

Ms. Martin seeks actual economic damages, including compensation for wages lost; punitive damages; attorney's fees, costs, and pre-judgment interest; and any other just and proper relief (*Id.*, at 8). As additional relief, Ms. Martin seeks the following pursuant to the ADA: (1) an additional amount as liquidated damages equal to the sum of her lost wages or salary, (2) benefits and/or other compensation denied or loss to her by reason of ADH's alleged ADA violations, and (3) any interest to which she is entitled for these causes (*Id.*, ¶ 56).

## II.     Legal Standard

### A.     Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a district court to dismiss a complaint for lack of subject matter jurisdiction.  The burden of proving subject matter jurisdiction falls on the plaintiff.  *V S Ltd. P'ship v. Dep't of Housing & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000). For a court to dismiss a claim under Rule 12(b)(1), the opposing party must successfully challenge the claim on its face or the factual truthfulness of its averments.  *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).  A facial attack restricts a court to review the face of the pleadings to determine whether the plaintiff has alleged a basis of subject matter jurisdiction.  *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990).

Facial attacks under Rule 12(b)(1) are subject to the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir. 2003).  Factual attacks, however, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.  *Osborn, 918 F.2d* at 729.

Lastly, an issue of subject matter jurisdiction may be raised at any time.  *Long v. Area Manager, Bureau of Reclamation*, 236 F.3d 910, 916 (8th Cir. 2001) (examining an instance where a district court did not address the issue of Eleventh Amendment immunity and concluding that the "question of subject-matter jurisdiction may be raised *sua sponte* at any time.").

### B.     Rule 12(b)(6)

A Federal Rule of Civil Procedure 12(b)(6) motion tests the legal sufficiency of the claim or claims stated in the complaint.  *See Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 773 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  Although a complaint "does not need detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Stated differently, the allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

A court considering a motion to dismiss must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences from those facts in favor of the non-moving party, here Ms. Martin.  *See Farm Credit*, 734 F.3d at 804; *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005); *Abels v. Farmers Commodities Corp*, 259 F.3d 910, 914 (8th Cir. 2001).  However, a court need not credit conclusory allegations or "naked assertion[s] devoid of further factual enhancement." *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768 (8th Cir. 2012) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).  "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  Finally, a court ruling on a motion to dismiss under Rule 12(b)(6) may consider documents or exhibits attached to a complaint, as well as matters of public and administrative record referenced in the complaint.  *See Owen v. Gen. Motors Corp.*, 533 F.3d 913, 918 (8th Cir. 2008); *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1244 (8th Cir. 2006).  "[D]ocuments necessarily embraced by the complaint are not matters outside the pleading." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (citing *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir.2004)).  "Documents necessarily embraced by the

pleadings include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'" *Ashanti*, 666 F.3d at 1151.

### III.   Analysis

Ms. Martin brings this action to remedy alleged violations of Titles I and V of the ADA and the ACRA (Dkt. No. 1).  ADH moves to dismiss all of Ms. Martin's claims (Dkt. No. 3).  First, ADH argues that this Court lacks jurisdiction over Ms. Martin's ADA claims because Ms. Martin did not exhaust her administrative remedies (*Id.*, ¶ 2).  Second, ADH asserts that this Court lacks jurisdiction over Ms. Martin's ADA and ACRA claims because the ADH is absolutely immune under the Eleventh Amendment and because Congress did not validly abrogate the state sovereign immunity under Titles I and V of the ADA (*Id.*, ¶¶ 3, 4).  Third, ADH maintains that, notwithstanding this Court's lack of subject matter jurisdiction, Ms. Martin fails to state a claim for relief under Titles I and V of the ADA or the ACRA (*Id.*, ¶ 5).  ADH also argues that the Court should not exercise supplemental jurisdiction over Ms. Martin's ACRA claims because all other causes of action should be dismissed (*Id.*, ¶¶ 2, 6).  The Court examines each of ADH's arguments.

ADH's arguments related to the Court's subject matter jurisdiction appear to be a facial, not a factual challenge, to Ms. Martin's lawsuit under Rule 12(b)(1) (Dkt. No. 4, at 7–10).  The Court acknowledges that ADH mentions the term "factual attack" (*Id.*, at 11).  However, having examined ADH's arguments and the record before it, the Court concludes ADH mounts a facial challenge.  For these reasons, the Court conducts its analysis of ADH's challenges to this Court's subject matter jurisdiction in the same way that the Court analyzes ADH's argument that Ms. Martin fails to state a claim.  In short, the Court accepts as true all well-pleaded facts in the

complaint and draws all reasonable inferences from those facts in favor of the non-moving party, here Ms. Martin.  *Farm Credit*, 734 F.3d at 804.

For the reasons explained in this Order, the Court finds that the Eleventh Amendment bars Ms. Martin's claim for money damages under Title I of the ADA and the ACRA.  The Court finds that Ms. Martin has failed to state a *prima facie* claim for retaliation under Title V of the ADA. Moreover, the Court raises *sua sponte* that Ms. Martin's claims for equitable relief are subject to dismissal because she sues only ADH and fails to sue a state official in his or her official capacity. *See Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007); *Long*, 236 F.3d at 916.

### A.    Failure To Exhaust Administrative Remedies

At the outset, the Court finds ADH's argument related to exhaustion unconvincing and declines to dismiss Ms. Martin's complaint on this basis (Dkt. No. 4, at 5–7).  On the face of the complaint, Ms. Martin states that she "received a Notice of Rights Letter" (Dkt. No. 1 ¶ 42).  In addition to receiving a Notice of Rights Letter or right-to-sue letter from the EEOC, an employee who works for a governmental agency is required to obtain a right-to-sue letter from the United States Attorney General.  42 U.S.C. §§ 12117, 2000e-5(f).  However, while statutory, obtaining a right-to-sue letter from the United States Attorney General is not jurisdictional and is subject to equitable waiver or tolling.  *Woods v. State of Mo. Dep't of Mental Health, Kansas City Reg'l Diagnostic Ctr.*, 581 F. Supp. 437, 443 (W.D. Mo. 1984); *see also Stowers v. Arkansas, State of et al.*, No. 3:19-cv-00238-DPM, 2020 WL 86543, at *2 (E.D. Ark. Jam. 6, 2020); *Chedjieu v. Arkansas Nat. Res. Comm'n*, No. 4:19-cv-00575-JM, 2019 WL 6794020, at *1 (E.D. Ark. Dec. 12, 2019) (citing *English v. Ware Cty. Dep't of Family & Children Servs.*, 546 F. Supp. 689, 692 (S.D. Ga. 1982)).  Accepting the facts as alleged by Ms. Martin as true, the Court declines to

dismiss Ms. Martin's complaint at this stage of the litigation on the basis of failing to exhaust administrative remedies.

### B.      Eleventh Amendment Immunity

Ms. Martin alleges that the ADH violated Titles I and V of the ADA by engaging in unlawful employment practices, retaliating against her after she made a reasonable accommodation request, and subjecting her to adverse employment actions (Dkt. No. 1, ¶¶ 43, 44). ADH claims that it is immune under the Eleventh Amendment because Titles I and V of the ADA and the ACRA do not abrogate its immunity and therefore this Court is divested of jurisdiction to hear Ms. Martin's suit (Dkt. No. 4, at 8–12).

Ms. Martin concedes that the Eleventh Amendment prevents her from pursuing money damages from ADH under Title I of the ADA and the ACRA (Dkt. No. 8, at 4).  However, she maintains that her Title I and ACRA claims for prospective, declaratory, or injunctive relief survive pursuant to the Supreme Court's holding in *Ex parte Young*, 209 U.S. 123, 155–56 (1908) (*Id.*, at 3–4).  With respect to her Title V claim she cites *Lors v. Dean*, 746 F.3d 857 (8th Cir. 2014), for the proposition that Title V money damages claims are only barred after a determination of:  (1) which aspects of the State's alleged conduct violated Title V of the ADA; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title V but did not violate the Fourteenth Amendment, whether Congress' purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid (Dkt. No. 8, at 1, 2).

### 1.      ADA Claim – Title I

Title I of the ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of

employees, employee compensation, job training, and other terms, conditions, and privileges of employment."   42 U.S.C. §§ 12112(a).   Pursuant to Title I of the ADA, "reasonable accommodation" includes "making existing facilities used by employees readily accessible to and usable by individuals with disabilities . . ."  42 U.S.C. § 12111.

In *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 374 (2001), the Supreme Court held that the Eleventh Amendment barred private individuals from suing for money damages under Title I of the ADA.  The Supreme Court reasoned that Congress had not validly abrogated the states' sovereign immunity because it had not identified "a pattern of discrimination by the States which violates the Fourteenth Amendment."  *Id.*  However, the Court left open the door to Title I suits brought "by the United States in actions for money damages, as well as by private individuals in actions for injunctive relief under *Ex parte Young*."  *Id.* at n.9.

In response to the ADH's motion to dismiss, Ms. Martin maintains that her Title I claims for prospective, declaratory, or injunctive relief survive pursuant to the Supreme Court's holding in *Ex parte Young*, 209 U.S. at 155–56 (Dkt. No. 8, at 3–4).  In *Ex parte Young*, "the Supreme Court held that when a state official acts in violation of the Constitution or federal law, he is acting *ultra vires* and is no longer entitled to the State's immunity from suit."  *Gibson v. Ark. Dep't of Correction*, 265 F.3d 718, 719 (8th Cir. 2001).  "In effect, *Ex parte Young* creates a legal fiction" in that it allows a private party to sue a state official in that person's official capacity under the theory that "a state official stops being a state official when he does something contrary to federal law."  *Id.* at 719–20.  "The *Ex parte Young* doctrine permits only prospective injunctive relief; no money damages are available."  *Gibson*, 265 F.3d at 720 (citing *Edelman v. Jordan,* 415 U.S. 651, 664, 667–68 (1974)).

While *Ex parte Young* allows a plaintiff to sue a state official in his or her official capacity to secure prospective injunctive relief without offending the Eleventh Amendment, "the same doctrine does not extend to states or state agencies." *Monroe*, 495 F.3d at 594 (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985); *Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs.,* 443 F.3d 1005, 1017 (8th Cir.2006)). There is no basis for invoking *Ex parte Young* where, as Ms. Martin has done here, a plaintiff sues only a state agency and not one of its officials. *Monroe*, 495 F.3d at 594. Despite noting that ADH may be served through its Secretary pursuant to Federal Rule of Civil Procedure 4(j)(2)(A), Ms. Martin names ADH, "a state agency," as the lone defendant in this lawsuit (Dkt. No. 1., ¶¶ 10–11). However, ADH did not squarely raise this issue in its moving papers or in a reply to Ms. Martin's response (Dkt. Nos. 6; 7).

Given the holding of *Garrett* and Ms. Martin's acknowledgment that she may not seek money damages under Title I of the ADA, the Court grants ADH's motion to dismiss Ms. Martin's Title I claims for money damages (Dkt. Nos. 3; 8, at 4). The Court dismisses with prejudice Ms. Martin's claims for money damages under Title I of the ADA.

Given Ms. Martin's decision to sue ADH as an agency rather than name a state official, and for reasons explained in this Order, the Court, on its own motion pursuant to Federal Rule of Civil Procedure 12(e), directs Ms. Martin to file a more definite statement by filing an amended complaint, should she choose to do so, within 21 days from the entry of this Order.

### 2.      ADA Claim – Title V

Based on this Court's review, neither the Supreme Court nor the Eighth Circuit Court of Appeals has addressed whether Congress validly abrogated state sovereign immunity in private actions brought under Title V of the ADA. *See, e.g, Lors*, 746 F.3d at 864. Citing the Supreme Court's decision in *Garrett* negating Congress' abrogation of state sovereign immunity in actions

under Title I of the ADA, some courts hold that Title V claims for money damages are barred when predicated on alleged violations of Title I. *See, e.g., Demshki v. Monteith*, 255 F.3d 986, 988 (9th Cir. 2001); *Reed v. College of the Ouachitas*, No. 6:11-cv-6020, 2012 WL 1409772, *5 (W.D. Ark. April 23, 2012) (noting that Supreme Court precedent supports a conclusion that Congress may not abrogate the states' Eleventh Amendment immunity from claims brought pursuant to Title V of the ADA); *Morr v. Mo. Dept. of Mental Health*, No. 4:08-cv-359-RWS, 2009 WL 1140108, *4 (E.D. Mo. April 28, 2009) (finding Title V claim for damages barred by the Eleventh amendment). Based on this Court's review, as recently as 2018, a federal district court in the Eighth Circuit applied this rationale to a case with similar claims to the claims in the instant case, ruling that "Plaintiff cannot sue Defendants for damages under Title V of the ADA on a claim of retaliatory discharge which is predicated upon an alleged violation of Title I." *Simpson v. Nebraska*, No. 4:18-cv-3168, 2018 WL 6618411, at *3 (D. Neb. Dec. 18, 2018).

However, given the Supreme Court's decision in *Tennessee v. Lane*, 541 U.S. 509, 523 (2004), "that Title II represented a valid abrogation of sovereign immunity," the Eighth Circuit has cautioned against applying the *Demshki* holding that Title V was not a valid abrogation based solely on the Supreme Court's ruling in *Garrett*. *Lors*, 746 F.3d at 863-864 (quoting *Klingler v. Dir.*, *Dep't of Revenue*, 455 F.3d 888, 891 (8th Cir. 2006)). Instead, the Eighth Circuit instructs district courts to apply the *United States v. Georgia*, 546 U.S. 151, 152 (2006), framework to determine whether Congress abrogated validly state sovereign immunity under Title V.[1] *Lors*, 746

---

[1] This Court observes that most courts, even those applying the *Georgia* standard, conclude that Title V claims for money damages are barred when predicated on alleged violations of Title I. *See e.g. Levy v. Kan. Dep't of Soc. & Rehab. Servs.*, 789 F.3d 1164, 1169 (10th Cir. 2015); *Dugger v. Stephen F. Austin State Univ.*, 232 F. Supp. 3d 938, 951 (E.D. Tex. 2017) (collecting cases supporting the proposition that "[c]ourts have uniformly held that Title V retaliation claims premised on employment discrimination under [T]itle I of the ADA are subject to the Eleventh

F.3d at 864.  The *Georgia* framework requires district courts to examine "on a claim-by-claim basis" the following:  (1) which aspects of the State's alleged conduct violated Title V; (2) to what extent such conduct also violated the Fourteenth Amendment; and (3) insofar as such conduct violated Title V but did not violate the Fourteenth Amendment, whether Congress' purported abrogation of sovereign immunity in such contexts is nevertheless valid.  *Lors*, 746 F.3d at 864 (quoting *Georgia*, 546 U.S. at 152).  However, a district court applying the *Georgia* framework need not determine the validity of Congress' purported abrogation if "the district court correctly determine[s] that the retaliation claim fails on the merits."  *Lors*, 746 F.3d at 864.  As a result, this Court will first examine whether Ms. Martin states a viable *prima facie* retaliation claim under Title V of the ADA.

Absent direct evidence of retaliation, claims of retaliation under the ADA are analyzed under a modified version of the burden shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1074 (8th Cir. 2006); *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1025 (8th Cir. 1999).  A plaintiff must first establish the *prima facie* case by demonstrating:  (1) the plaintiff engaged in a statutorily protected activity, (2) that an adverse action was taken against the plaintiff by the employer, and (3) a causal connection exists between the adverse action and the protected activity.  *Amir*, 184 F.3d at 1025.  After making the *prima facie* showing, the "burden then shifts to the defendant to proffer a legitimate nondiscriminatory reason for the adverse action."  *Id.* at 1025-26.  "The burden of production then shifts back to the plaintiff to show that the defendant's reason is a pretext for discrimination."  *Id.* at 1026.

---

Amendment" and noting cases that have held that no such absolute bar applies to Title V retaliation claims premised on violations of Title II ).

At the motion to dismiss stage of litigation, the relevant inquiry is whether the plaintiff can make out the *prima facie* case. *See, e.g., Fesenmeyer v. City of Kansas City*, No. 15-00850-cv-W-DGK, 2016 WL 3167264, at *3 (W.D. Mo. June 6, 2016). Ms. Martin alleges that she satisfies the first two elements of the *prima facie* case (Dkt. No. 1, ¶¶ 44, 46). She claims that she sought a reasonable accommodation pursuant to the ADA and reported her district manager's comments before facing numerous adverse employment actions, which ended in her constructive termination (*Id.*). *Lenzen v. Workers Comp. Reinsurance Ass'n*, 843 F. Supp. 2d 981, 993 (D. Minn. 2011), *aff'd*, 705 F.3d 816 (8th Cir. 2013) (citing *Amir*, 184 F.3d at 1025, for the proposition that "an employee's conduct is statutorily protected if the employee opposed an act or practice that the ADA made unlawful."). Ms. Martin asserts that retaliatory adverse employment actions culminated in her constructive discharge from ADH (Dkt. No. 1, ¶¶ 44, 46, 50–53).

ADH argues that Ms. Martin cannot make out the third element of the *prima facie* retaliation case, arguing that Ms. Martin "has not offered any facts showing a causal connection between any of her alleged adverse employment actions and her protected activity[,] [arguing that the] only connection she alleges is that she was put on administrative leave one day after reporting her district manager for alleged comments about her disability" (Dkt. No. 4, at 17). ADH then quotes *Lors* for the proposition that "not every prejudiced remark made at work supports an inference of illegal employment discrimination." 746 F.3d at 866 (citing *Rivers–Frison v. Southeast Mo. Cmty. Treatment Ctr.*, 133 F.3d 616, 619 (8th Cir. 1998)). The Eighth Circuit has "carefully distinguished between comments which demonstrate a discriminatory animus in the decisional process or those uttered by individuals closely involved in employment decisions, from stray remarks in the workplace, statements by non-decisionmakers, or statements by

decisionmakers unrelated to the decisional process." *Lors*, 746 F.3d at 866 (citing *Rivers–Frison*, 133 F.3d at 619).

Having examined Ms. Martin's complaint, the Court determines that she fails to allege sufficiently a *prima facie* claim of retaliation. With respect to protected activity, Ms. Martin first contends that, after making her accommodation request referencing the ADA, her conditions at work worsened and that she experienced adverse employment actions (Dkt. No. 1, ¶ 21). Ms. Martin also contends that "her district manager made statements implying Plaintiff was exaggerating the impact of her disability, malingering, or using her disability as an excuse. . ." and that when she "reported these retaliatory actions committed by her district manager," she engaged in protected conduct (Dkt. No. 1, ¶¶ 25, 26).

With respect to whether Ms. Martin reporting her district manager's alleged conduct constitutes protected activity, under the ADA's retaliation clause Ms. Martin does not have to establish that the harassment she reported was in fact prohibited under the ADA. 42 U.S.C. § 12203(a); *see also Brannum v. Mo. Dep't of Corr.,* 518 F.3d 542, 547 (8th Cir. 2008). Instead, for her reporting to constitute protected activity, Ms. Martin must prove that she "had a good faith, reasonable belief that the underlying challenged conduct violated" the ADA. *Id.* (quoting *Bakhtiari v. Lutz,* 507 F.3d 1132, 1137 (8th Cir. 2007)) (internal quotation mark omitted). The reasonableness of Ms. Martin's asserted belief must be analyzed "in light of the applicable substantive law." *Id.* At 549; *see also Barker v. Mo. Dep't. of Corr.,* 513 F.3d 831, 835 (8th Cir. 2008) (stating that the plaintiff must "demonstrate that he had an objectively reasonable belief" that the reported conduct constituted harassment).

To support her retaliation claim, Ms. Martin maintains, essentially, that she faced a hostile work environment created by unidentified "coworkers and management" after making her request

for accommodation (Dkt. No. 1, ¶¶ 22-25).  Further, Ms. Martin maintains that she was placed on administrative leave one day after making complaints about her district manager and that she was constructively discharged (*Id.*, ¶¶ 26, 30).

In *Shaver v. Independent Stave Co.,* the Eighth Circuit held that, in order for a hostile work environment claim brought under the ADA to be actionable, the "harassment must be both subjectively hostile or abusive to the victim and 'severe and pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive.'"  350 F.3d 716, 721 (8th Cir 2003) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21-22 (1993)).  The Eighth Circuit emphasized that "anti-discrimination laws do not create a general civility code," and "[c]onduct that is merely rude, abrasive, unkind, or insensitive does not come within the scope of the law." *Id.*  "Relevant factors for determining whether conduct rises to the level of harassment include the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance.'"  *Pye v. Nu Aire, Inc.,* 641 F.3d 1011, 1018 (8th Cir. 2011) (quoting *Singletary v. Mo. Dep't of Corr.,* 423 F.3d 886, 892 (8th Cir. 2005)).

The Eighth Circuit found that the harassment in *Shaver* did "not rise to the same level as that in cases where we have granted relief." *Shaver*, 350 F.3d at 721.  In coming to its conclusion, the Eighth Circuit noted that the plaintiff had not presented any evidence that:  (1) the harassment was so severe that it resulted in any psychological treatment, (2) the harassment involved statements—such as death threats—that were "explicitly or implicitly" threatening, or (3) the harassment included the physical harassment of the plaintiff. *Id.* At 722. *See also Jenkins v. Med. Lab'ys of E. Iowa, Inc.*, 880 F. Supp. 2d 946, 964–65 (N.D. Iowa 2012), *aff'd*, 505 F. App'x 610

(8th Cir. 2013) (determining that plaintiff Jenkins who alleged that her coworkers gave her the silent treatment, acted annoyed with her, failed to answer questions, acted like they did not want her to be around, and occasionally slammed doors failed to demonstrate that a reasonable person could find that this behavior was anything more than rude, abrasive, unkind, or insensitive and determining that plaintiff did not engage in protected conduct and could not establish a *prima facie* case of retaliation under the ADA).

With respect to Ms. Martin's contention that she was constructively discharged, an employee is constructively discharged when an employer deliberately renders the employee's working conditions intolerable and thus forces the employee to quit her job. *Tatum v. City of Berkeley*, 408 F.3d 543, 551 (8th Cir. 2005); *West v. Marion Merrell Dow, Inc.,* 54 F.3d 493, 497 (8th Cir. 1995). To state a claim for constructive discharge, Ms. Martin's complaint must show on its face: (1) that a reasonable person in her situation would find the working conditions intolerable, and (2) that the employer intended to force her to quit. *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 616-17 (8th Cir. 2007); *see also Johnson v. City of Blaine*, 970 F. Supp. 2d 893, 910 (D. Minn. 2013) (citing *Carpenter* and applying this framework to a constructive discharge ADA case). A plaintiff may meet the second element by showing that her resignation was a reasonably foreseeable consequence of the alleged discriminatory actions. *Carpenter*, 481 F.3d at 616-17. "An employee who quits without giving her employer a reasonable chance to work out a problem is not constructively discharged." *West*, 54 F.3d at 498. *See also Vajdl v. Mesabi Acad. Of KidsPeace, Inc.*, 484 F.3d 546, 553 (8th Cir. 2007).

The Court determines that Ms. Martin has not alleged facts sufficient to state a retaliation claim. Because she does not identify what her requested accommodation was, when she requested the accommodation, from whom she requested the accommodation, or whether her employer

granted it, the Court is unable to determine temporal proximity and causation between that conduct and her alleged adverse employment action.  Moreover, even if Ms. Martin engaged in protected activity by complaining about her district manager's statements, because Ms. Martin does not identify who made the decision to place her on administrative leave or whether that individual was aware of her requested accommodation or the complaints she made the day before about her district manager, the Court is unable to determine causation between Ms. Martin's purported protected conduct and her alleged adverse employment action.  Further, given the Eighth Circuit's controlling law on actionable hostile work environment and constructive discharge claims, Ms. Martin's complaint lacks essential allegations required to state sufficiently those claims.

Although Ms. Martin asserts that she received a poor performance rating (Dkt. No. 1, ¶ 27), that "ongoing discriminatory and retaliatory actions committed by Defendant caused Plaintiff's health conditions to worsen," (*Id.*, ¶ 28), and that she "had to seek emergency medical treatment multiple times due to the stress and anxiety of the situation," (*Id.*, ¶ 29), the timeline of these events in relation to her requested accommodation, in relation to her complaint about her district manager's comments, in relation to her being placed on administrative leave, and in relation to her constructive discharge is unclear.  Further, she does not identify the individual who gave her the purportedly poor performance rating or state whether that individual was aware of her requested accommodation or her complaint about her district manager.

Ms. Martin then alleges that "working conditions were made so intolerable by the Defendant that she was constructively terminated from her employment on June 17, 2022." (*Id.*, ¶ 30).  She does not explain when this occurred in relation to when she requested an accommodation, in relation to when she complained about her district manager's comments, in relation to when she was placed on administrative leave, or in relation to when any of the other allegations in her

complaint occurred.  Given these deficiencies, Ms. Martin insufficiently alleges causation and temporal proximity.  For these reasons, the Court determines that Ms. Martin fails to state a *prima facie* retaliation claim.

Because the Court finds that Ms. Martin has failed to state a plausible claim for relief under Title V by alleging a *prima facie* retaliation claim, the Court declines to proceed to the next inquiry regarding whether Ms. Martin's claim under Title V is barred by the Eleventh Amendment.  *See Lors*, 746 F.3d at 864.

At this stage of the litigation, for the reasons explained in this Order, the Court, on its own motion pursuant to Federal Rule of Civil Procedure 12(e), directs Ms. Martin to file a more definite statement by filing an amended complaint, should she choose to do so, within 21 days from the entry of this Order.

### 3.  ACRA Claims

Ms. Martin also alleges that ADH violated the ACRA by intentionally discriminating against her on the basis of her "sensory, mental, or physical disability," resulting in the denial of her right to obtain and hold employment without discrimination and retaliation (Dkt. No. 1, ¶¶ 36, 38).  Ms. Martin seeks injunctive relief, front pay, back pay, attorney's fees and costs, compensatory damages for any past or future out-of-pocket losses and any emotional harm, and punitive damages (*Id.*, ¶ 39).  ADH seeks dismissal on this claim, arguing that Arkansas has not waived its immunity nor consented to this lawsuit (Dkt. No. 4, at 8).  In her response, Ms. Martin admits that "[t]o be fair, Defendant's Motion properly disallows the money damages remedy of the ADA Title I and the Arkansas Civil Rights Act counts" (Dkt. No. 8, at 4).  Notwithstanding these admissions, Ms. Martin then argues that *Ex parte Young* and its progeny save her claim for equitable relief under the ACRA because these cases hold that "a private party may sue state

officials in their official capacities, which is treated as a suit against the state, for prospective injunctive relief" (*Id.*).

Based on Ms. Martin's admission, the ACRA's language, and governing case law, the Court grants ADH's motion with respect to Ms. Martin's ACRA claims for "front pay, back pay, attorney's fees and costs, compensatory damages for any past or future out-of-pocket losses and any emotional harm, and punitive damages" and dismisses those claims with prejudice (Dkt. Nos. 1, ¶¶ 1, 39; 3).   Ark. Code Ann. § 16-123-107 (stating "[n]othing in this subchapter shall be construed to waive the sovereign immunity of the State of Arkansas."); *Cooper v. St. Cloud State Univ.*, 226 F.3d 964, 968–69 (8th Cir. 2000) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120–21(1984), and explaining that absent a clear and unequivocal waiver, the Eleventh Amendment's bar against hauling a non-consenting state or state agency into federal Court applies to state-law claims just as equally as those brought under federal law).

The Court next turns to Ms. Martin's request for injunctive relief pursuant to the ACRA based on *Ex parte Young*.  Though Ms. Martin may seek prospective injunctive relief against state officials sued in their official capacity, Ms. Martin fails to name any state official against whom she seeks injunctive relief (Dkt. No. 1).  *Ex parte Young*, 209 U.S. at 157.  However, ADH did not squarely raise this issue in its moving papers or in a reply to Ms. Martin's response (Dkt. Nos. 6; 7).  Given Ms. Martin's decision to sue ADH as an agency rather than name a state official, and for reasons explained in this Order, the Court, on its own motion pursuant to Federal Rule of Civil Procedure 12(e), directs Ms. Martin to file a more definite statement by filing an amended complaint, should she choose to do so, within 21 days from the entry of this Order.

Given the Court's rulings, at this time, the Court does not examine whether Ms. Martin has failed to state a claim upon which relief may be granted under the ACRA or whether it has supplemental jurisdiction to hear this claim.

## IV.    Rule 12(e) Motion

Plaintiffs who file suit pursuant to the ADA, like those who file suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), must file suit within 90 days of receiving notice of the EEOC's determination.  *See* 42 U.S.C. § 12117(a) (ADA); 42 U.S.C. § 2000e–5(f)(1) (Title VII).[2]  Further, although Arkansas Code Annotated § 16-56-126 gives a plaintiff one year to refile an action after a nonsuit, the Arkansas savings statute does not apply to lawsuits that are governed by a federal statute of limitations, such as ADA claims.  *See Garrison v. Int'l Paper Co.*, 714 F.2d 757, 759 n.2 (8th Cir. 1983) (stating that "[b]ecause Title VII actions are governed by a federal statute of limitations, the Arkansas saving[s] clause is inapplicable" (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 395 (1946))).  The Eighth Circuit Court of Appeals has held that a dismissal without prejudice of a Title VII claim operates to leave a plaintiff as if no action had been filed.  *Id.* (citing *Moore v. St. Louis Music Supply Co., Inc.*, 539 F.2d 1191, 1194 (8th Cir. 1976)).  This same rationale likely applies to an ADA claim.

In other words, if this Court dismisses without prejudice certain of Ms. Martin's claims based on legal issues this Court raises for the first time in this Order and that no party squarely raised in the briefings, this Court's dismissal without prejudice likely will operate as a dismissal with prejudice barring Ms. Martin from refiling her claims. *See generally Moore v. St. Louis Music*

---

[2]  Although the 90-day limitations period is subject to equitable tolling in appropriate circumstances, courts have generally reserved the remedy of equitable tolling for situations in which the reasons for the delay were beyond the control of the plaintiff.  *See Hill v. John Chezik Imports*, 869 F.2d 1122, 1124 (8th Cir. 1989) (finding that equitable tolling of the 90-day period was not appropriate when the plaintiff did not inform the EEOC of her new address).

*Supply Co*., 538 F.2d 1191 (8th Cir. 1976).  For these reasons, the Court, on its own motion pursuant to Federal Rule of Civil Procedure 12(e), directs Ms. Martin to file a more definite statement by filing an amended complaint, should she choose to do so, within 21 days from the entry of this Order.

## V.      Motion To Stay

The ADH filed a motion to stay discovery and deadlines in the Initial Scheduling Order (Dkt. No. 6).  Ms. Martin opposes the motion (Dkt. No. 9).  For good cause shown, given this Court's rulings and the current procedural posture of this case, the Court grants ADH's motion to stay discovery and deadlines in the Initial Scheduling Order (Dkt. No. 6).  If appropriate, the Court will enter an Amended Initial or Final Scheduling Order in this matter.

## VI.     Conclusion

For the forgoing reasons, the Court grants, in part, and denies, in part, ADH's motion to dismiss (Dkt. No. 3).  The Court dismisses with prejudice Ms. Martin's claims for money damages pursuant to Title I of the ADA and the ACRA.  With respect to Ms. Martin's claims for injunctive relief pursuant to the Title I of the ADA and the ACRA and with respect to Ms. Martin's claims pursuant to Title V of the ADA, the Court, on its own motion pursuant to Federal Rule of Civil Procedure 12(e), directs Ms. Martin to file a more definite statement by filing an amended complaint, should she choose to do so, within 21 days from the entry of this Order.  Further, for good cause shown, the Court grants ADH's motion to stay this Court's Initial Scheduling Order and discovery (Dkt. No. 6).

It is so ordered this the 29th day of September, 2023.

Kristine G. Baker
United States District Judge

22